Conner v Brixmor Prop. Group Inc (2024 NY Slip Op 50871(U))

[*1]

Conner v Brixmor Prop. Group Inc

2024 NY Slip Op 50871(U)

Decided on July 10, 2024

Supreme Court, Westchester County

Ondrovic, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 10, 2024
Supreme Court, Westchester County

Mandi Conner, Plaintiff,

against
Brixmor Property Group Inc, CW A&P Mamaroneck LLC, and 
 North Shore Farms Mamaroneck Ltd, A/K/A North Shore Farms, Defendants.

Index No. 59112/2023

Vincent Nesci — counsel for pltf
Lewis Brisbois — counsel for deft North Shore
Varavaro, Cotter — counsel for Brixmor

Robert S. Ondrovic, J.

In a personal injury action, defendants Brixmor Property Group Inc (Brixmor) and CW A&P Mamaroneck LLC (collectively, property defendants) move for an Order pursuant to CPLR 3212 granting summary judgment and dismissing the complaint and any crossclaims asserted against property defendants (Motion Seq. 1), plaintiff cross-moves for an Order pursuant to CPLR 3216(3) striking defendants' answers or in the alternative for summary judgment (Motion Seq. 2), and North Shore Farms Mamaroneck LTD, a/k/a North Shore Farms (North Shore) moves for an Order pursuant to CPLR 3212 granting summary judgment and dismissing the complaint and any crossclaims asserted against North Shore (Motion Seq. 3).
Papers Considered NYSCEF Doc. Nos. 35-37, 39-61, 63-65, 67, 69-94
1. Notice of Motion/Affirmation of Heath A. Bender, Esq./Exhibits A-E/Statement of Material Facts
2. Notice of Cross-Motion/Affirmation of Vincent P. Nesci, Esq./Affidavit of Mandi Conner/Exhibits A-M/Response to Statement of Material Facts/Memorandum of Law
3. Affirmation of Heath A. Bender, Esq. in Opposition to Cross-Motion/Exhibits A-B
4. Affirmation of Vincent P. Nesci, Esq. in Reply
5. Affirmation of Preston C Holmes, Esq. in Opposition to Cross-Motion (on behalf of North Shore)/Exhibits A-C
6. Notice of Motion/Affirmation of Preston C Holmes, Esq./Statement of Material Facts/Exhibits A-G
7. Affirmation of Vincent P. Nesci, Esq. in Opposition (to North Shore)/Affidavit of Mandi Conner/Statement of Material Facts/Memorandum of Law/Exhibits G-M
8. Affirmation of Vincent P. Nesci, Esq. in Reply (to North Shore's opposition)
Discussion
By way of background, plaintiff seeks damages for personal injuries allegedly resulting from a trip and fall on a handicap ramp at the entrance of North Shore, a supermarket located at 805 Mamaroneck Avenue in Mamaroneck, on May 17, 2022. North Shore leases the premises from property defendants. 
After discovery, a Trial Readiness Order was entered, and plaintiff filed the Note of Issue in April 2024. Property defendants now move for an Order pursuant to CPLR 3212 granting summary judgment and dismissing the complaint and any crossclaims asserted against them, plaintiff cross-moves for an Order pursuant to CPLR 3216(3) striking the defendants' answers or in the alternative for summary judgment, and North Shore also moves for an Order pursuant to CPLR 3212 granting summary judgment and dismissing the complaint and any crossclaims asserted against it.
Motion Seq. 1
Property defendants argue that plaintiff's case is based on speculation because plaintiff cannot specifically identify what caused her to fall. In support, property defendants submit, among other things, plaintiff's deposition transcript and still images captured from surveillance video of the incident. Property defendants contend that plaintiff testified that she may have tripped on the transition from the blacktop parking lot to the sidewalk ramp, but she did not know what caused her to fall, and that she did not know if the foot that she tripped with was already fully on the sidewalk ramp or if it was half on the blacktop and half on the ramp.
Motion Seq. 2
Plaintiff argues that defendants engaged in spoliation by failing to disclose surveillance video of the incident prior to depositions. Plaintiff contends that the Preliminary Conference Order (PC Order) for this matter directed the production of any video of the incident and plaintiff's cross-notice to take defendants' depositions also required production of any video, but only still photographs taken from the video were produced. Plaintiff argues that had the video been disclosed prior to depositions, counsel could have asked North Shore's witness a series of questions related to the video.
In opposition to property defendants' application and in support of plaintiff's alternative application for summary judgment, plaintiff argues, among other things, that plaintiff clearly set forth the location of her fall and the mechanics of the fall. In support, plaintiff refers to various excerpts from plaintiff's deposition transcript and submits photographs of the handicap ramp and plaintiff's affidavit, wherein she states, "I have now seen the video and can state that as I testified in my deposition my left foot caught the raised ramp at it's (sic) transition from the parking lot causing me to fall" (plaintiff's affidavit [NYSCEF Doc. 46]). Plaintiff argues that photographs of the ramp show a raised lip of the ramp, which was not flush with the macadam of the parking lot as required by Federal DOJ ADA standards.
Motion Seq. 3
North Shore argues, like property defendants, that plaintiff provided speculative and conclusory testimony as to her fall. Additionally, North Shore argues that plaintiff failed to set [*2]forth any evidentiary proof in admissible form that a defective condition existed. North Shore contends that plaintiff testified that the ramp had a "very small" lip, which she estimated was approximately a half-inch to one inch, but plaintiff failed to establish the existence of an alleged defect. North Shore also contends that plaintiff failed to submit any photographs or other evidence showing any type of defect at the alleged accident location, and plaintiff cannot establish defendant had constructive notice of any alleged defect. Further, plaintiff testified that she used the same entrance several times a month over the course of a few years and has never fallen at North Shore prior to the date of the subject incident. 
Opposition to Plaintiff's Motion Seq. 2
In opposition to plaintiff's application, property defendants argue that there is no willful and contumacious conduct by property defendants, there was no repeated failure to comply with discovery, and the delay in disclosing the video was a single event and not the fault of property defendants given that the video did not belong to property defendants and was property of North Shore. Moreover, property defendants contend that the plaintiff first learned of the video during plaintiff's deposition, but now has the video (see property defendants' exhibit B, February 28, 2024, email attaching videos [NYSCEF Doc. 65]). Despite this, plaintiff did not request a further deposition of plaintiff after receiving the video and plaintiff nonetheless conducted defendants' depositions about a month after plaintiff's deposition and then filed the Note of Issue and Certificate of Readiness stating all discovery was complete.
Property defendants also contend that plaintiff's affidavit is inconsistent with her deposition testimony, is designed to avoid summary judgment against her, and is inherently suspect and insufficient to create a genuine issue of material fact. As to the branch of plaintiff's application seeking summary judgment, property defendants argue that plaintiff offers no proof of any defect on defendants' property. Rather, property defendants contend that plaintiff only offers characterizations by counsel of what the video and pictures show and counsel's unsupported opinion that the subject ramp was not compliant with ADA requirements. Moreover, property defendants contend that plaintiff produced no expert (engineer or safety consultant), no measurements from an expert, and no proof of a code or building violation.
North Shore also opposes plaintiff's application, by arguing that prior to the initial appearance on this matter, the subject video was provided upon email request to co-defendant by the prior handling attorney for North Shore. Same was completed in furtherance of determining potential additional insured coverage for the matter. North Shore continues that prior to and subsequent to the PC Order, North Shore had not been served with any discovery demands from plaintiff for the subject video. North Shore clarifies that the PC Order directs production of videos, but in the section related to depositions, and specific to defendants' depositions. North Shore argues it did not violate the PC Order because the video was produced prior to defendants' depositions. Additionally, North Shore points to the testimony taken during plaintiff's deposition, which demonstrates North Shore counsel's belief that the video had been provided. North Shore also contends that at no point during plaintiff's deposition did plaintiff seek to temporarily pause the deposition in order to review the subject video.
Like property defendants, North Shore argues that plaintiff's affidavit is inconsistent with her deposition testimony and insufficient to establish a prima facie case for summary judgment against North Shore. North Shore also argues that, to the extent plaintiff successfully alleges that she caught her foot on the sidewalk curb, the allegedly defective condition with the sidewalk curb is trivial and not actionable. Moreover, North Shore contends that plaintiff's assertions of [*3]defect are speculative, and like property defendants, North Shore argues plaintiff failed to submit any expert testimony.
Summary Judgment
The proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case (see Winegrad v NY Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see Winegrad, 64 NY2d at 853). 
Once the prima facie showing has been made, "the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; see Zuckerman, 49 NY2d at 562). Mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient to defeat a prima facie showing of entitlement to summary judgment (see Zuckerman, 49 NY2d at 562).
Generally, "absent a statute imposing strict liability, a defendant may not be held liable for creating a dangerous or defective condition upon property unless the defendant had actual, constructive, or imputed knowledge of the danger created" (Walsh v Super Value, Inc., 76 AD3d 371, 372 [2d Dept 2010]). "To constitute constructive notice, a defect must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it" (Britto v Great Atl. & Pac. Tea Co., Inc., 21 AD2d 436, 436 [2d Dept 2005]). 
"However, a property owner may not be held liable for trivial defects, not constituting a trap or a nuisance, over which a pedestrian might merely stumble, stub his or her toes, or trip" (Taussig v Luxury Cars of Smithtown, Inc., 31 AD3d 533, 533 [2d Dept 2006]). "In determining whether a defect is trivial, the court must examine all of the facts presented, including the width, depth, elevation, irregularity and appearance of the defect along with the time, place, and circumstance of the injury" (id. at 534).
Here, plaintiff testified that she did not know for certain what caused her fall.
Q So last thing you said was your left foot was half on the driving lane and half on the red plastic as you transitioned from the driving lane to the ramp; is that accurate?
A I don't know. I said, I believe. I'm not sure where exactly my foot was in full. I don't know if my whole foot made it to the plastic or not, but that is  that is when I fell. When I was transitioning from the drive  driving lane to the plastic ramp to get into the store walkway.
Q Okay. Is it correct then to say you lead with your left foot onto the red plastic, whether it was half and half or fully on the red, you don't know, but is it correct to say you led with your left foot when you made that transition?
A Yes (pltf dep. trans. at 55:4-23, property defendants, exh. B [NYSCEF Doc. 40], North Shore, exh. E [NYSCEF Doc. 80] [emphasis added]).
* * *
Q Your left foot is what you tripped with; correct?
A Correct.
Q And when you were making the transition from the driving lane onto the ramp, that was a step you took with your left foot?
A Correct.
Q Okay. And you don't know if when you tripped, your left foot was half on the driving lane and half on the ramp or it was fully on the red plastic part of the ramp; is that correct? You don't know which way?
A Correct (id. at 57:3-17 [emphasis added]).

 * * *
Q Okay. Ma'am, do you know what caused your left foot to either trip or stumble as you described it?
A I—I believe I tripped on the—you know, I'm not 100 percent sure, but I—there was—there's like a—the little lip that I think I may have tripped on (id. at 58:19-59:2 [emphasis added]).

 * * *
Q You believe you tripped on a lip? What lip are you referring to?
A That little outside piece of the plastic that's not level to the ground, to the driving lane.
Q Is that the half an inch transition height differential—
A Yes.
Q —from the ramp to the driving surface that you described before?
A Yes.
Q Okay. But you're not sure?
A No. Correct, I'm not 100 percent sure (id. at 59:12-25 [emphasis added]).

 * * *
Q So as your head was up at the time, you may have an idea, but you aren't sure what you tripped on; is that correct
A Correct (id. at 120:24-121:4 [emphasis added]).
Plaintiff also testified that there is a "slight lip" about "a half an inch to an inch" in height between the asphalt of the parking lot and the curb start of the subject ramp.
Q Okay. So the ramp goes on a decline, the same as the driving surface, if you were coming out of the market with your cart, right, and in the middle of the ramp? And then if you're going into the supermarket, right, from the driving surface, is it correct to say if you're walking in the middle of the ramp, it would be the same height as you transition from the blacktop to the concrete; correct?
A It is the same height towards the driving, but there is a slight lip there. There is—it's not—it's not 100 percent smooth, but it's not large like the—the curb.
Q And ma'am, just so we're clear, I'm talking right in the middle of the ramp; right?
A Yes.
Q So is the transition from the street, the driving surface, onto the ramp where the red, bubbly material is, is that in the middle of the ramp? Is that the same height as the driving surface?
A No.
Q Okay. And in the middle, what's the differential in height between the driving surface and the middle of the ramp, where this ramp meets with the driving surface?
A Maybe a half an inch to an inch. It's very small.
Q I'm sorry. You said a half an inch to an inch?
A Yes.
Q Okay. And is it small enough, the height differential small enough that if you're [*4]coming out of the store with the shopping cart, you can take your shopping cart down the ramp with no problem?
A Yes (plaintiff's dep. transcript at 45:4-47:8 [emphasis added]).
As such, defendants have demonstrated prima facie entitlement to summary judgment dismissing the complaint by submitting plaintiff's deposition testimony, wherein plaintiff was unable identify any non-trivial defect that caused her accident (He Shang Wang v 82-90 Broadway Realty Corp., 82 AD3d 1158, 1159 [2d Dept 2011] ["defendant made a prima facie showing of entitlement to judgment as a matter of law by submitting the injured plaintiff's deposition testimony, which demonstrated that he was unable to identify any defect which caused him to fall"]; see also Robinson v Lupo, 261 AD2d 525, 525-526 [2d Dept 1999]; Castellitto v Atlantic & Pac. Co., 244 AD2d 379, 380 [2d Dept 1997]). 
To be clear, even if plaintiff identified the height differential between the parking lot at the edge of the subject ramp as the cause of her fall, that alleged defect is trivial and not actionable (see Easley v U Haul, 166 AD3d 852, 853 [2d Dept 2018] ["defendants presented evidence that the alleged defect was an inch or less in size, that the incident occurred in the daytime hours under clear conditions, and that the area immediately surrounding the alleged defect was clear of debris and not dangerous or trap-like"]). Moreover, plaintiff testified that her accident occurred between 11:00 and 11:30 a.m. (pltf dep. trans. at 25:23-25) and the weather was clear (id. at 26:2-16), that she had visited North Shore several times a month for a few years and used the same entrance to enter the store (id. at 27:24-28:9), and that until the time of her accident, plaintiff believed that the subject entrance was visually the same as it had been in the months and years prior (id. at 28:21-29:2).
In opposition, plaintiff failed to raise a triable issue of material fact requiring a trial of the action. Even if the Court were to accept plaintiff's affidavit as identifying with certainty the location that allegedly caused her fall, i.e., the subject ramp's "transition from the parking lot," plaintiff's testimony and the photographs of the ramp undermine any semblance of a defective condition (see Baldasano v Long Is. Univ., 143 AD3d 933, 934 [2d Dept 2016] ["Considering these photographs, along with the injured plaintiff's description of the time, place, and circumstance of the injury, the defendants established, prima facie, that the alleged defect was trivial as a matter of law, and therefore, not actionable"]). The photographs plaintiff submits in support of her cross-motion and in opposition to defendants' motions depict nothing more than a mundane, typical entrance to a supermarket devoid of any objective measures of a trap-like or defective condition.
Plaintiff's application
First, plaintiff argues that defendants should be sanctioned for delaying production of the surveillance video and submits an affidavit premised on her review of said video. However, plaintiff failed to submit the subject video and the Court cannot determine if plaintiff's arguments related to its belated production have any merit. Moreover, the sole basis for this branch of plaintiff's application is premised on a singular event, the late production of the video. This alleged noncompliance is not demonstrative of willful and contumacious behavior (see Johnson v Ortiz Transp., LLC, 205 AD3d 699, 700 [2d Dept 2022]).
As for the branch of plaintiff's application seeking summary judgment, plaintiff has failed to establish a non-trivial defect caused her accident, as noted above.
All other remaining contentions have been considered and are either without merit or [*5]rendered moot by the above determination.
Based on the foregoing, it is hereby
ORDERED that property defendants' motion for an Order pursuant to CPLR 3212 granting summary judgment and dismissing the complaint and any crossclaims asserted against them (Motion Seq. 1) is GRANTED; and it is further
ORDERED that plaintiff's cross-motion for an Order pursuant to CPLR 3216(3) striking the defendants' answers or in the alternative for summary judgment (Motion Seq. 2) is DENIED; and it is further
ORDERED that North Shore's motion for an Order pursuant to CPLR 3212 granting summary judgment and dismissing the complaint and any crossclaims asserted against it (Motion Seq. 2) is GRANTED; and it is further
ORDERED that the complaint is DISMISSED; and it is further
ORDERED that North Shore's cross-claims against property defendants, premised on any recover against North Shore, is DISMISSED.
Dated: July 10, 2024
White Plains, New York
HON. ROBERT S. ONDROVIC, J.S.C.